IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TOMMY B. SIMS,

    **Plaintiff,**

vs.                                                                                                                        No. CIV 02-1155 LCS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## MEMORANDUM OPINION

**THIS MATTER** came before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed March 13, 2003. The Commissioner of Social Security issued a final decision denying Plaintiff's applications for disability insurance benefits and supplemental insurance income. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), having considered the Motion, arguments of counsel, administrative record, and applicable law, finds that Plaintiff's Motion to Reverse and Remand for a Rehearing should be **DENIED**.

**Background**

Plaintiff, now forty years old, filed applications for disability insurance benefits and supplemental security income on April 9, 1999, alleging disability commencing on September 12, 19980, due to seizure disorder and back injury. Plaintiff has a tenth grade education, and past relevant work as a floor installer, construction worker, cabinet maker and cabinet installer. His disability insured status expired on December 31, 2001.

The Commissioner denied Plaintiff's applications for benefits both initially and on

reconsideration. The Commissioner's administrative law judge ("ALJ") held a hearing and received testimony from Plaintiff. At the hearing, Plaintiff was represented by counsel. The ALJ issued her decision on October 4, 2000, analyzing Plaintiff's claim according to the sequential analysis set forth in 20 C.F.R. § 416.920(a)-(f).

At the first step of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At the second step, the ALJ determined that Plaintiff had severe impairments consisting of degenerative lumbar disc disease with spondylolysis, status post lumbar fusion, and chronic low back pain. At the third step of the sequential analysis, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal any of the impairments found in the Listing of Impairments, 20 C.F.R. §§ 404.1501-.1599, Subp. P, App. 1.

The ALJ found that Plaintiff's allegations of disabling pain were not credible because he exaggerated his complaints of pain and that Plaintiff had the residual functional capacity for a limited range of light work. At step four, the ALJ found that Plaintiff was unable to return to his past relevant work. At step five, relying on the testimony of Kevin Davis, a vocational expert who testified at the hearing, the ALJ determined that Plaintiff could work as a cashier or a surveillance system monitor. Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff submitted additional evidence to the Appeals Council consisting of a disability evaluation and a supplemental vocational evaluation from Ken Williams, a consultant hired by Plaintiff. After considering the additional evidence, the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42

U.S.C. §405(g).

**Standard of Review**

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). Evidence is not substantial if it is overwhelmingly contradicted by other evidence. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted). The district court reviews of the entire record, and may not reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

**Discussion**

Plaintiff argues that the Appeals Council failed to address Plaintiff's additional evidence, that the ALJ's credibility assessment is unsupported by the medical record as a whole, and that the ALJ erred by not conducting an appropriate and thorough analysis of Plaintiff's pain condition pursuant to Soc. Sec. Ruling 96-3p and Tenth Circuit case law.

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)(1)(A)). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment, he has an impairment or combination of

impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520; 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

Plaintiff argues that the Appeals Council failed to address the vocational evidence that Plaintiff submitted with his request for review. Plaintiff submitted a disability report dated November 16, 2000, and a supplemental vocational report dated June 11, 2002, from Ken Williams M.A. D-ABVE, LPCC, a vocational consultant and licensed mental health counselor hired by Plaintiff. (R. at 167-177.) Mr. Williams believed that Plaintiff suffered from short-term memory problems and mild depression. (R. at 174.) Mr. Williams administered several psychological tests and concluded that Plaintiff had a verbal IQ of 80, a performance IQ of 103, and full scale IQ of 89. (R. at 175-176.) Mr. Williams opined that Plaintiff functioned at the eighth grade level in word recognition and pronunciation. (*Id.*) Mr. Williams believed that Plaintiff was precluded from performing the jobs of cashier and surveillance system monitor due to his mental abilities and physical limitations. (R. at 172.) The Appeals Council considered Plaintiff's additional vocational evidence and found that it provided no basis for changing the ALJ's decision. (R. at 5.)

Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council is required to consider evidence submitted with a request for review if the additional evidence is new, material, and relates to the period under review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The evidence presented to and considered by the Appeals Council became part of the administrative record and must be

4

considered in the substantial evidence evaluation. *O'Dell*, 44 F.3d at 859. Contrary to Plaintiff's position, the Appeals Council need not "articulate its own assessment of the additional evidence." *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). The regulation covering additional evidence does not require the Appeals Council to announce detailed reasons for finding additional evidence insufficient to change the ALJ's decision. 20 C.F.R. § 404.970(b). In this case, the Appeals Council followed the regulations and properly considered Plaintiff's new evidence.

    A review of the new evidence verifies that the Appeals Council reached the correct conclusion. Plaintiff argues that Mr. Williams' report demonstrates that the security system surveillance monitor position does not suffice to satisfy the Commissioner's burden because there are not a sufficient number of such jobs in New Mexico. Mr. Williams stated in his vocational report that the number of security system surveillance jobs is severely limited in New Mexico because such positions are usually connected with public transportation. (R. at 172.) Judicial notice is taken that public transportation is not prevalent in New Mexico. However, the prevalence of such jobs within the state is not germane.

    At step five, the Commissioner "must decide if [claimant] can do any other work ... that exist[s] in significant numbers in the national economy." 20 C.F.R. §§ 1561, 416.961. "[W]ork exists in the national economy when it exists in significant numbers either in the region where [claimant] live[s] or in several other regions of the country. It does not matter whether ... [w]ork exists in the immediate area in which [claimant] live[s]." *Id.*, §§ 404.1566(a); 416.966(a). Thus, "the number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy--not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999). Mr. Davis testified that there were 16,000 security system monitor jobs nationally and 3,200 such jobs regionally. (R. at 41.)

5

These numbers are significant. Plaintiff's argument to the contrary is without merit.

Plaintiff further maintains that the additional evidence established that his intellectual capacity precludes him from performing the jobs at issue. The new evidence indicated that Plaintiff's IQ is in the average or low average range and that he functioned at the eighth grade level in word recognition and pronunciation. (R. at 175-176.) However, Mr. Davis was present at the hearing, listened to Plaintiff's testimony and was familiar with his case. (R. at 40.) Plaintiff testified that he worked for many years as a subcontracting floor covering installer and construction worker. (R. at 28.) During the course of his employment, Plaintiff measured for carpet and cabinets, calculated estimates for flooring, and read floor plans. (R. at 38-39.) Plaintiff testified that he stopped working due to his due to his back problem, and not because of any deficiency with his intelligence or verbal skills. (R. at 29.) No physician noted the existence of cognitive problems. After considering this information, Mr. Davis testified that Plaintiff was able to perform the jobs of cashier and surveillance system monitor. (R. at 41.) The new evidence does not require a change in the ALJ's determination because the decision "remains supported by substantial evidence." *O'Dell*, 44 F.3d at 859.

The Appeals Council has authority to resolve conflicts in the record. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) (holding that the ALJ has authority to resolve conflicts in the medical record). The Appeal's Council's decision is supported by the opinion of Mr. Davis, Plaintiff's testimony, and the record as a whole. The new evidence does not contradict the ALJ's conclusion. Based on a review of the administrative record, I conclude that substantial evidence supports the Commissioner's decision that Plaintiff is not disabled at step five because he can perform the jobs of cashier and surveillance system monitor.

Plaintiff asserts that the ALJ's erred in assessing his credibility with respect to his complaints of disabling pain and failed to follow Social Security Ruling 96-7p. "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). Social Security Ruling 96-7p provides in pertinent part that "[r]easons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." *Id*. The ALJ noted this controlling standard and thoroughly reviewed the medical evidence in her decision. (R. at 15-17.) The ALJ discounted Plaintiff's subjective complaints of pain and limitations because they lacked consistency with the objective medical evidence and because of his use of "mostly over-the-counter medications." (R. at 17.) The ALJ also observed that Plaintiff appeared for the hearing with a cane, yet there was no evidence that a cane was prescribed by a physician.

Plaintiff testified that he was taking Tylenol 3 in September 2000. (R. at 31.) This statement is contradicted by the record. Plaintiff was prescribed Tylenol 3 after he fell on March 12, 1999. (R. at 120.) However, on June 3, 1999, treating physician Michael W. Woods recommended that Plaintiff take ibuprofen. (Tr. at 135). On June 14, 2000, treating physician George A. Brown, M.D. recommended that Plaintiff continue to take over-the-counter medication. (R. at 154.) On July 29, 1999, Plaintiff reported that he was taking ibuprofen and Tylenol. The record contains no evidence that a physician prescribed a cane. The ALJ sufficiently articulated and linked her credibility finding to substantial evidence of record. Substantial evidence support the ALJ's decision.

Plaintiff contends that the ALJ failed to properly analyze his complaints of disabling pain. When evaluating a claim of disabling pain, the ALJ must consider (1) whether there is objective

7

medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of all the evidence, both objective and subjective, the pain is in fact disabling. *Kepler*, 68 F.3d at 390 (*citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)); *see also* Social Security Ruling 96-3p. The ALJ satisfied this standard.

After Plaintiff experienced recurrent seizures, Madeleine Grigg-Damberger, M.D. performed a neurological examination on January 13, 1998. Dr. Grigg-Damberger found that Plaintiff was normal neurologically, except for a slight difficulty in retrieving words. (R. at 114.) Strength, muscle tone, gait and posture were normal, with no atrophy or abnormal movements. (R. at 114-115.) Dr. Grigg-Damberger prescribed Dilantin,[1] recommended an EEG and scheduled Plaintiff to return in one week for a check of his blood Dilantin level. (R. at 115.)

On September 11, 1998, Plaintiff had a seizure in his bathroom, fell on the bathtub, and injured his back. (R. at 129.) X-rays revealed no acute fractures or dislocations. (R. at 128.) Plaintiff reported that he had not taken his Dilantin since February 1998. (R. at 129.) A emergency room physician prescribed Dilantin and ibuprofen. (R. at 125-126.) On March 12, 1999, Plaintiff had another seizure in his bathroom, injuring his shoulder and back. (R. at 120-124.) Again, Plaintiff had been non-compliant with his Dilantin. (R. at 122.) Plaintiff does not dispute that his seizures are controlled when he takes his Dilantin.

Dr. Woods evaluated Plaintiff on April 12, 1999, and observed that Plaintiff was in a mild amount of pain, had benign Waddell signs, normal gait, a moderate limitation in flexion, and no neurological deficits. (R. at 136-137.) Dr. Woods recommended ibuprofen and back strengthening exercises for pain management. (R. at 137.) In a follow up visit after Plaintiff obtained x-rays in

---

[1] Dilantin is used to control seizures. http://my.webmd.com/content/drugs/2/4046_1724.htm

Texas, Dr. Woods opined that Plaintiff had probable symptomatic spondylolysis at L5-S1. (R. at 135.)

On June 14, 2000, Dr. Brown wrote that Plaintiff had fractured L5 in September 1998, when he fell in the bathroom. (R. at 154.) After conservative treatment provided no relief, Plaintiff underwent an L4-L5 fusion without complication on March 23, 2000. (*Id.*) At a follow-up appointment, Plaintiff exhibited good screw and rod positioning, some paresthesia in the anterior thigh, intact reflexes and no muscle atrophy. (*Id.*) Dr. Brown recommended that Plaintiff continue walking and taking over-the-counter medication for pain. (*Id.*) Dr. Brown opined that Plaintiff would be unable to return to his regular job as a carpet layer for at least six months.

On August 24, 2000, Dr. Brown completed a Statement of Ability to Do Work-Related Physical Activities. (R. at 155.) Dr. Brown opined that Plaintiff could lift 20 pounds occasionally, up to ten pounds frequently, stand for two hours out of an eight hour work day and sit for six hours out of an eight hour work day. (*Id.*) Dr. Brown noted that plaintiff had lower back pain, but full strength and intact sensation in all muscle groups. (R. at 156.)

The ALJ weighed the specific medical evidence against Plaintiff's pain complaints and found Plaintiff's credibility was lacking. *Kepler* does not require a formal recitation of the *Luna* factors. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). In this case, there was objective medical evidence that Plaintiff suffered from a pain producing impairment and that loose nexus connected the objective evidence and the pain complaints. However, substantial evidence supports the ALJ's determination that, in light of all the evidence, both objective and subjective, the pain was not in fact disabling. *See Kepler*, 68 F.3d at 390. The ALJ identified specific evidence that undermined Plaintiff's claim of disabling pain and followed the *Luna* analysis. (R. at 16-17.) The ALJ applied

correct legal standards and substantial evidence supports her decision.

Plaintiff argues that the Commissioner's decision on a subsequent set of applications is entitled to preclusive effect. Plaintiff filed a second set of applications for disability insurance benefits and supplemental security income on March 11, 2001. (Attachment to Pls' Br.) On November 12, 2002, ALJ Dan Dane concluded that reopening of the April 1999 applications was not warranted and that Plaintiff was disabled at step five as of March 11, 2001. (*Id*.) The subsequent decision is not preclusive because it does not cover the time period at issue in this instant case. Furthermore, the Secretary's decision not to reopen a previously adjudicated claim for benefits is discretionary and, therefore, is not a final decision reviewable under 42 U.S.C. § 405(g). *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Accordingly, the subsequent decision is not entitled to preclusive effect.

**Conclusion**

Upon review of the administrative record and the arguments presented, the Court has determined that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 9), filed March 13, 2003, should be **DENIED**.

**A JUDGMENT CONSISTENT WITH THIS MEMORANDUM OPINION WILL ISSUE.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE
BY CONSENT AND DESIGNATION**